IN THE UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

FILED
JUL 13 2020
U.S. DISTRICT COURT-WVND
WHEELING, WV 26003

JOHN KEVIN MOORE, et. al, :

        Plaintiffs, :

         :

VS. : CIVIL CASE NUMBER 3:20-CV-123

         : Groh
UNITED STATES BUREAU OF PRISONS, : Trumble
WARDEN F.J. BOWERS, : Sims
        Defendants. :

**PLAINTIFFS' 42 U.S.C. § 1983 ACTION AS TO THE CIVIL RIGHTS VIOLATION BY THE UNITED STATES BUREAU OF PRISONS AND WARDEN F.J. BOWERS AT THE FEDERAL CORRECTIONAL INSTITUTION MORGANTOWN**

    **NOW COMES** the Plaintiffs named above, proceeding in pro se and respectfully petitions this Honorable Court for relief from the actions of the United States Bureau of Prisons and Warden F.J. Bowers of Federal Correctional Institution Morgantown pursuant to 42 U.S.C. § 1983, giving the Court jurisdiction to entertain the pleadings.

### STATEMENT OF THE FACTS

    The Federal Correctional Institution located in Morgantown, West Virginia is operated by the United States Bureau of Prisons through supervision of Warden F.J. Bowers. The facility presently houses over 500 inmates sentenced from the various federal district courts across the United States. The facility contains seven housing units which two are presently not in use. These units are constructed in a manner that is congregational, stacking the Plaintiffs on top of one another in small cubicles. Normally, those conditions would be acceptable. However, these are not normal times. When the COVID-19 virus lifted its ugly head, those facilities such as nursing homes and institutional

settings were breeding grounds. (See Interim Guidance on Management of Coronavirus Disease Control 2019 (COVID-19) in Correctional and Detention Facilities, Center for Disease Control (March 23, 2020)).

Certain actions were implemented at Federal Correctional Institution Morgantown as an attempt to protect the inmate population from acquiring the virus, issuing face masks, no interaction between the inmates from the five operating units, meals being eaten in the units as opposed to the dining hall, restriction from use of the educational department and recreation department and weekly temperature tests. These actions fall short of any real attempt to protect the inmate population and adhere to the CDC recommendation that all correctional facilites take preventative measures, including: ensuring an adequate supply of hygiene and medical supplies, allowing alcohol-based sanitzer throughout the facilities, providing no-cost soap to all inmates for frequent handwashing, cleaning and disinfecting frequently touched a surfaces several times per day, performing pre-intake screening and temperature checks for all new entrants, **INCREASING SPACE BETWEEN ALL DETAINED PERSONS TO AT LEAST SIX FEET**, staggering meals, and having healthcare staff perform regular rounds. Of the above recommendations, nearly all have not been complied with, and the increasing of space has been totally ignored with more inmates piled on top of one another because of the closure of two of the seven units. **(EMPHASIS ADDED)**.

Had the Defendants been sincere in attempting to protect the Plaintiffs from contracting the COVID-19 virus, all staff members and inmates would have been tested for the virus as opposed to simply going through the motions by taking temperatures once a week that may and may not prove an individual is infected and is carrying the virus to spread to others.

The Court should consider visiting the opinion recently entered by the Honorable Judith E. Levy of the United States District Court for the Eastern Division of Michigan, Southern District, in <u>United States v. Agomuoh</u>, 2020 Dist. LEXIS 86562 (May 18, 2020), directly addressing the conditions at Federal Correctional Institution Morgantown and the failure of the Bureau of Prisons to not only test for the COVID-19 virus, but also failing to adhere to the Center for Control and Prevention (CDC) guidelines as to prison settings. Judge Levy gave a detailed analysis as to why she did not accept the Bureau of Prisons position that no documented cases of COVID-19 have appeared at Morgantown, and their position that "herculen" measures to "mitigate the impacts of COVID-19." She also stated without "beating around the bush" that she had sentenced defendant Agomuoh to 60 months in prison; **<u>IT DID NOT SENTENCE HIM TO DEATH OR TO INCARCERATION THAT CARRIES A SIGNIFICANT RISK OF DEATH</u>**, GRANTING Compassionate Release and defining the conditions at Morgantown as being one of the extraordinary and compelling reasons to do so. **(EMPHASIS ADDED)** It should also be noted that another jurist of reason, the Honorable Lawrence J. Vilardo of the United States District Court for the Western District of New York also recognized the dangers of being incarcerated at Federal Correctional Institution Morgantown due the the COVID-19 virus, the inability for social distancing because open units where the inmates are closely housed. See <u>United States v. Lucas</u>, 2020 U.S. Dist. LEXIS 75428 (W.D.N.Y. 2020)(GRANTING Compassionate Release).

The above persuasive authorities of law paint a clear picture why the Plaintiffs' claims are not mere assertions brought by disgruntled inmates who have nothing better to do than waste the Court's valuable

time.

## P.A. CORBIN'S DELIBERATE INDIFFERENCE TO THE INMATE POPULATIONS' SAFETY REGARDING THE COVID-19 PANDEMIC

Although the inmate population should not be saddled with having to request testing for the COVID-19 virus because it is the responsibility of the medical staff to insure the safety and welfare of the Plaintiffs, one inmate did request testing and was given a response that is beyond the pale of any professional standards or expectations of a medical staff in an institutional setting considering the pandemic that shows no signs of going away. Taking the position that the inmate did not meet the criteria of the Bureau of Prisons and failing to even conduct an examination of that inmate speaks in volumes as to the deliberate indifference and organized effort not insure inmate safety. It would seem the medical staff at Federal Correctional Institution Morgantown feels it doesn't need to document the real numbers as to the cases of COVID-19 in the facility and paint a false picture that Morgantown is a "Shangri-la" where the virus does not exist.

It is also utterly amazing that P.A. Corbin refers to Bureau of Prison Policy for specific criteria to "cherry pick" who is eligible for testing when the CDC and all medical experts in the field of communicable diseases have ever established any such criteria. It should also be noted that Federal Correctional Institution Morgantown was without a licensed physician when P.A. Corbin rendered her decision not to even make an attempt to have the inmate examined to see if he did or did not qualify for so-called criteria.

Considering the above, the Plaintiffs are at the mercy of either total incompetence or an organized effort to intentionally ignore all of

their obligation to provide a safe environment to execute the sentences imposed by the federal courts to be served in Morgantown. Plaintiffs offer the written response of P.A. Corbin as prima facie evidence as to lack of a safe environment to be housed in. It is liken to be "in the hands of the Philistines, surrounded by assassins and imbeciles." **(SEE EXHIBIT A)**

## EXCEPTIONAL CIRCUMSTANCES: COVID-19 PANDEMIC

As of June 10, 2020, COVID-19 has infected over 7.2 million people, leading to at least 410,000 deaths worldwide and over 125,000 in the United States. On March 11, 2020, the World Health Organization offically classified COVID-19 as a pandemic, and Governor Jim Justice declared a State of Emergency for March 16, 2020. Governor Justice issued a "stay at home" order on March 23, 2020, to prevent further spread of the virus, an order that was ultimately extended to May 3, 2020. But West Virginia is easing its restrictions in phases, a move that most health experts believe is premature. As of June 10, 2020, there are 2188 confirmed cases of the virus in West Virginia, and 85 people have died. The COVID-19 pandemic is clearly out of the ordinary, uncommom, or rare.

The CDC has issued guidance that all individuals take immediate preventative actions to minimize the spread of COVID-19, including avoiding crowded areas and staying at home as much as possible. The conditions in prison do not allow for inmates to take the same preventive measures and to create a safe environment. Prison life places limitations on their ability to effectively combat the virus. Inmates cannot practice social distancing and are instead contained in two-man cubicles piled on top of one another. They have little or no control over the way in which

their surroundings are cleaned and sterilized. Further, the sanitary conditions are substantially diminished compared to the average community.

According to the public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe;" "infection control is challenging in these settings."[1]

The largest U.S. outbreaks of COVID-19 are tied to jails and prisons. The New York times stated that even though four of the ten largest known sources of infection in the country at the time were jails and prisons, "those numbers are most likely a vast undercount, because [agencies like] the Federal Bureau of Prisons[] **are not testing everyone who falls ill**." (EMPHASIS ADDED)

The Bureau of Prisons in particular has been in the spotlight for the poor handling of the COVID-19 outbreak. On March 31, 2020, due to the nationwide impact of COVID-19, the Bureau of Prisons issued a mandatory 14-day lockdown for all inmates in BOP facilities. That lockdown was later extended to May 18, 2020, and then to June 30, 2020. But despite this lockdown, the spread of the virus has continued. And yet, the BOP has not regularly tested inmates, especially at Federal Correctional Institution Morgantown.

While the BOP has not disclosed the extent of testing at most facilities, the testing situation at nearby FCI Elkton, pursuant to public court filings, is dire. On April 1, 2020, FCI Elkton reported

---

[1] Achieving A Fair and Effective COVID-19 Response: An Open Letter to Vice President Pence, and other Federal, States, and Local Leaders from Public Health and Legal Experts in the United States (March 2, 2020), https://bit.ly/2W9V603.

[2] Cases Surge in an Ohio Prison, Making It a Top Hot Spot, N.Y. Times, (Apr. 20, 2020), https://nytimes.com/2020/04/20/us/coronavirus-live-news.html.

three inmates tested positive for the COVID-19 virus. Only one day later, Woodrow Taylor died of COVID-19, even though his COVID-19 test would not return back positive until April 3, 2020. On April 22, 2020, Judge James S. Gwin granted a preliminary injuction and orders all medically vulnerable inmates at FCI Elkton to be immediately released to home detention or transferred to another location as a result of a class-action habeas action in the Northern District of Ohio filed on April 13, 2020. Judge Gwin found that the number of COVID-19 tests at Elkton (only seventy-five for a prison with over 2000 inmates) was woefully inadequate and the expectation of twenty-five additional tests arriving per week was "all but useless." There is now over 700 confirmed cases!

The situation at Federal Correctional Institution Morgantown is far more deficient, with no testing being conducted to any of the inmates staying at the facility, instead only having temperatures taken weekly, despite a fever not being a necessary symptom of COVID-19.[3] The daily routine does not promote social distancing because of physical design of the housing units make it imposssible.

For the above, all inmates being held in Morgantown are being placed in danger of contracting the virus, especially those with underlying chronic health conditions.

### THE APPROPRIATE RELIEF

As the Honorable Court is well aware, this are unusual times we live in as well as being dangerous times to the COVID-19 pandemic, especially so for the Plaintiffs who are dependent on the BOP to insure their safety and welfare. When this Court commits a criminal defendant to the custody of the Attorney GEneral to serve a sentence it has imposed, it is the

---

[3] Coronavirus Symptoms: Frequently Asked Questions, John Hopkins Medicine, http:hopkinsmedicine.org/health/conditions-and-disease(June 7, 2020)

Court's expectation that the defendant will be housed in a safe and humane environment for the entire period of his or her service of sentence. This is usually the case, with the exception of a few isolated incidents that has been recognized by the courts. This is definitely not the case when an examination is made as to the operations and preventative measures that fall short of any real effort to keep the Plaintiffs safe from COVID-19. The COVID-19 pandemic is a one-hundred year event that changes the entire equation. Because of this fact, unprecedented measures are warranted to insure the Plaintiffs' well being. Anything less would be a blatant Eighth Amendment violation.

It should be noted that the majority of the population housed at the Ottisville Federal Prison Camp located in New York were furloughed to their homes because of the dangers imposed by COVID-19. This uprecedented action would never been inacted in the days prior to pandemic, just another example of the seriousness of the times.

Considering the fact all of the inmate population has been designated to Morgantown because they do not pose a threat to the general public, use of furloughs and other forms of alternative incarceration such as home confinement should not be out of the question when the Court considers the appropriate relief to insue the safety of those individuals serving their federal terms of incarceration. Again, the instant pleading is strictly dealing with the execution of sentence as opposed to issues dealing with Plaintiffs' prior criminal proceedings. As the Court would have jurisdiction to entertain a 28 U.S.C. § 2241 as to the conditions and execution of sentence, the Court has wide latitude to create remedies to the unsafe conditions under 42 U.S.C. § 1983.

## CONCLUSION

For all the reasons presented, Plaintiff JOHN KEVIN MOORE and all of the inmate population in the custody of the Bureau of Prisons being held at Morgantown Correctional Institution prays this Honorable Court considers the argument contained in the instant pleading as to having their civil rights being compromised in violation of the Eighth Amendment against cruel and unusal punishment. The Eighth Amendment "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must insure that inmates receive adequate food, clothing, shelter, and medical care, and **must take reasonable measures to guarantee the safety of the inmates**." See Farmer v. Brennan, 511 U.S. 825, 833 (1994); King v. United States, 536 Fed. Appx. 358 (4th Cir 2013).

Because the United States Bureau of Prison and Warden F.J. Bowers have not maintained the safety of the inmates in their custody at Federal Correctional Institution Morgantown due to the COVID-19 pandemic, Plaintiffs pray the Court grants all relief it deems appropriate under the circumstances.

Respectfully submitted,

DATED: July 5, 2020              **CERTIFICATE OF SERVICE**     S/ _John Kevin Moore_
Morgantown, WV                                                                       JOHN KEVIN MOORE

I, JOHN KEVIN MOORE do hereby swear that I caused to be served a true and correct copy Plaintiff's 42 U.S.C. 1983 Action as to the Civil Rights Violation by the United States Bureau of Prisons and Warden F.J. Powers at the Federal Correctional Institution Morgantown by serving the Office of the United State Attorney who represents the named Defendants by placing said document in a sealed/prepaid envelope via the United Statee Mail Service, addressed to:

           Office of the United States Attorney
           Northern District of West Virginia
                Post Office Box 591
              Wheeling, West Virginia
                      26003

DATED: July 5, 2020                    S/ _John Kevin Moore_
Morgantown, WV                                    JOHN KEVIN MOORE

**PAGE NINE**